ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| LUTHER JAMES CLAYTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 309-042 |
| | ) | |
| GEORGIA DEPARTMENT OF CORRECTIONS; ANTHONY WASHINGTON, Warden; JACKIE MORGAN, Deputy Warden of Care and Treatment; RONNIE LAWRENCE, Deputy Warden of Security; ALAN ADAMS, Director of Health Services; GAIL POWELL, Medical Administrator; F/N/U HARMON, R.N.; A. HOBBY, R.N.; P. BROWN, R.N.; MARY ALSTON, Doctor; and SHEANDRA CALHOUN, Institution Grievance Coordinator, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at the Johnson State Prison in Wrightsville, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Because he is proceeding *in forma pauperis*, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C.

§§ 1915(e) & 1915A.[1]

I.   **SCREENING OF THE COMPLAINT**

*Liberally* construing Plaintiff's complaint, the Court finds the following. In his complaint, Plaintiff names as Defendants: (1) Georgia Department of Corrections ("GDOC"); (2) Anthony Washington, Warden at Johnson State Prison ("JSP"); (3) Jackie Morgan, Deputy Warden of Care and Treatment at JSP; (4) Ronnie Lawrence, Deputy Warden of Security at JSP; (5) Alan Adams, State Director of Health Services for the GDOC; (6) Gail Powell, Medical Administrator at JSP; (7) F/N/U Harmon, R.N. at JSP; (8) A. Hobby, R.N. at JSP; (9) P. Brown, R.N. at JSP; (10) Mary Alston, Doctor at JSP; and (11) Sheandra Calhoun, Institution Grievance Coordinator at JSP. (Doc. no. 1, pp. 1, 2, 5).

Plaintiff states that he has diabetes and that he is not being properly treated for his diabetes, conditions resulting from his diabetes, as well as a skin condition. More specifically, Plaintiff maintains that beginning in October 2008, his medication for his diabetes and his soft shoe profile were discontinued even though he was not seen by a doctor. Plaintiff also argues that the medication for his skin condition was discontinued and that all of his medical conditions (those relating to his diabetes as well as his skin condition) were being ignored by the nursing staff at JSP. (Id. at 7).

According to Plaintiff, he made a request to see a doctor about an incision and swelling in his right knee. (Id. at 8). Rather than being seen by a doctor, Plaintiff maintains

---

[1]Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he has no means by which to pay an initial fee; thus, the Court will proceed to screen Plaintiff's complaint even though he is unable to pay any initial partial filing fee. However, in accordance with the terms of the Consent to Collection of Fees form which Plaintiff signed, he remains liable for the full $350.00 filing fee.

that he was seen by Defendant Hobby, a nurse. (Id.). Plaintiff maintains that Defendant Hobby "lied and stated [that Plaintiff] was evaluated on 10/29/08," and directed Plaintiff to apply warm moist compresses to his right knee. (Id.). Plaintiff further maintains that Defendant Hobby diagnosed Plaintiff's problem even though she is a nurse, not a doctor. (Id.). Plaintiff believes that because of his status as a "chronic care patient," he was required to be seen by a doctor. (Id.).

Regarding Defendant Harmon, a nurse, Plaintiff asserts that she cancelled his soft shoe profile. (Id.). Plaintiff explains that he needed a new soft shoe because one of his shoes had torn. (Id.). Plaintiff notes that his soft shoe profile had not expired. (Id.). Plaintiff maintains that in order to obtain the new shoe, he was required to undergo a foot evaluation. (Id.). Plaintiff notes that Defendant Harmon performed his foot evaluation and that he was not seen by a doctor. (Id. at 8-9). Plaintiff states that rather than provide him with a new shoe, Defendant Harmon discontinued his soft shoe profile. (Id.). Plaintiff believes that Defendant Harmon, because she is a nurse, not a doctor, is not trained to make such a determination. (Id. at 9). Plaintiff makes a similar complaint against another nurse, Defendant Brown. (Id.). Plaintiff states that he requested to be seen by a doctor because he was feeling pain in his arms, legs, and back, but Defendant Brown purportedly refused to schedule Plaintiff to see a doctor because he had just seen a doctor four days before. (Id.). Plaintiff states that Defendant Brown recommended that Plaintiff apply a warm compress and take Tylenol. (Id.). Plaintiff argues that because Defendant Brown is not a doctor, it was improper for her to diagnose him. (Id.).

Turning to Defendant Alston, the head medical doctor at JSP, Plaintiff alleges that

3

Defendant Alston discontinued his diabetic mediation, as well as his soft shoe profile, even though she has never seen Plaintiff. (Id. at 10). Plaintiff alleges that as a result of the discontinuation of his medication, he suffers from dizziness and "shakes," and even "passed out" once. (Id.). Plaintiff maintains that since his soft shoe profile was discontinued, he has been forced to wear shoes that aggravate his foot condition. (Id.). Furthermore, Plaintiff alleges that although he had been prescribed soap for a skin condition, this prescription was discontinued (presumably by Defendant Alston), and as a result, Plaintiff's sores have worsened to the point he can "barely sleep due to [the] discomfort." (Id.).

As to Plaintiff's grievance issues, Plaintiff claims that while incarcerated at JSP, he submitted various grievances (formal and informal) concerning the medical care provided for his diabetes. (Id. at 6-11). However, Plaintiff is unsatisfied with the method by which grievances are handled. (Id.). He alleges that from October 2008 through March 2009, Defendant Washington, the Warden at JSP, did not respond to any of his formal grievances or personal letters. (Id. at 6). Plaintiff argues that although Defendant Lawrence, the Deputy Warden of Security, answered some of the formal grievances, Defendant Lawrence, never investigated or questioned Plaintiff concerning the issues raised in the grievances. (Id.). Similarly, Plaintiff argues that even though all informal grievances were addressed to Defendant Morgan, he never investigated the claims raised in the grievances, let alone questioned Plaintiff. (Id.).

Additionally, Plaintiff argues that although Defendant Powell, the Medical Administrator, responded to "all medical concerns/appeals," she also failed to investigate the issues. Rather, Plaintiff maintains that Defendant Powell simply believed the purported

"lies" from her staff that Plaintiff had been treated. (Id. at 6-7). Furthermore, Plaintiff alleges that Defendant Powell was aware of Plaintiff's medical condition, was aware that his medication had been discontinued, and was responsible for her staff's purported negligent treatment of Plaintiff's condition. (Id. at 7).

Next, Plaintiff alleges that Defendant Adams, the State Director of Health Services for the GDOC, never investigated the claims presented, but rather simply used a "pre-printed denial" to respond to Plaintiff's grievances. (Id. at 7). Plaintiff also notes that Defendant Adams's responses were not signed or dated. (Id.). Lastly, Plaintiff maintains that Defendant Calhoun, the Institution Grievance Coordinator, never spoke to Plaintiff or (to Plaintiff's knowledge) investigated any of the claims raised in the grievances.[2] As his requested relief, Plaintiff seeks the creation of a "better" grievance process, proper treatment for his various medical conditions, and compensation for his pain and suffering. (Id. at 11).

## II. DISCUSSION

### A. Defendant GDOC

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the complaint fails to state a claim for relief against Defendant GDOC. That is, while Plaintiff names the GDOC as a Defendant, he does not assert any allegations of wrong doing regarding this Defendant in his statement of claims. In fact, Plaintiff does not mention Defendant GDOC anywhere in his statement of claims, let alone explain how the GDOC –

---

[2] Plaintiff does not mention the GDOC in his statement of claim.

as an entity – is capable of being sued for any improper actions that are alleged to have occurred as the result of the actions of a specific individual.

"Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). The Eleventh Circuit has held, a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1222-23 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")). Thus, in the absence of an allegation of any connection between actions of Defendant GDOC with an alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against this Defendant. On that basis, Defendant GDOC should be dismissed.

Moreover, to the extent Plaintiff seeks monetary damages from the GDOC, "the Eleventh Amendment insulates a state from suit brought by individuals in federal court unless the state either consents to suit or waives its Eleventh Amendment immunity." Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (footnote omitted, citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)). Arms or agencies of the state are also immune from suit. Alabama v. Pugh, 438 U.S. 781, 782 (1978) (*per curiam*). Simply put, "[t]here can be no doubt [] that suit against the State and its Board of Corrections is

barred by the Eleventh Amendment, unless [Georgia] has consented to the filing of such a suit."); Edelman v. Jordan, 415 U.S. 651, 663 (1974); see also Stevens, 864 F.2d at 115 (Georgia Department of Corrections is protected from suit by Eleventh Amendment). Thus, Plaintiff has not asserted any viable claims against the GDOC.

## B.      Grievance Procedure Claims

To the extent Plaintiff alleges that his constitutional rights were violated by Defendants Washington, Morgan, Lawrence, Powell, Adams, and Calhoun, because he believes his grievances were somehow not investigated properly or were not responded to, his claims must fail. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous

7

claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff states that Defendants Washington, Morgan, Lawrence, Powell, Adams, and Calhoun either did not respond to Plaintiff's grievances and/or denied Plaintiff's grievances without sufficiently investigating the claims asserted therein. However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Therefore, Plaintiff's claims against Defendants Washington, Morgan, Lawrence, Powell, Adams, and Calhoun, regarding an alleged violation of the grievance procedures, fail as a matter of law.

C.  **Supervisory Liability**

To the extent that Plaintiff blames Defendant Powell for the acts of her subordinates regarding Plaintiff's claims of deliberate indifference to his health, without alleging any

8

personal involvement, his claim fails.[3] Plaintiff argues that Defendant Powell was aware of Plaintiff's medical conditions, was aware that his medication had been discontinued, and was responsible for her staff's purported negligent treatment of Plaintiff's condition. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). As noted above, Plaintiff has not alleged that Defendant Powell actually participated in the events forming the basis of Plaintiff's claims of deliberate indifference to his health. Moreover, Plaintiff has not proffered any reason to support the conclusion that this Defendant violated any of Plaintiff's constitutional rights.

Similarly, Plaintiff fails to allege a "causal connection" between Defendant Powell and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a

---

[3]Plaintiff has named various wardens as Defendants in the above-captioned case; however, Plaintiff does not allege any claims against them in their supervisory capacities. Rather, Plaintiff only raised claims concerning the Grievance Procedure against these Defendants.

9

history of widespread abuse[4] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy ... result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has not made the necessary showing with respect to Defendant Powell.[5] Accordingly, Plaintiff's claims against Defendant Powell on a basis of supervisory liability should be dismissed.

---

[4] The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

[5] While Plaintiff states that Defendant Powell knew about his conditions and did nothing to correct them, Plaintiff does not satisfy his burden of putting a supervisor on notice of a widespread problem or otherwise show that the supervisor was directly involved with Plaintiff's alleged claims. Alleging that he filed grievances and appeals with Defendant Powell does not satisfy the burden of putting a supervisor on notice of a widespread problem or otherwise show that the supervisor was directly involved with Plaintiff's alleged claims. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory official who denied administrative grievance and otherwise failed to act based on information contained in the grievance); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions). Likewise, as explained *supra*, Plaintiff has no constitutional claim against Defendant Powell based on any alleged mishandling of the grievances. See Wildberger, 869 F.2d at 1467-68 (affirming lower court decision that "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution").

## III. CONCLUSION

For the reasons set forth above, this Court **REPORTS** and **RECOMMENDS** that Plaintiff's grievance procedure and supervisory liability claims, as well as Defendants GDOC, Washington, Morgan, Lawrence, Adams, Powell, and Calhoun, be **DISMISSED** from the case.[6]

SO REPORTED and RECOMMENDED this 28th day of September, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[6] By separate Order, the Court has directed that service of process be effected on Defendants Harmon, Hobby, Brown, and Alston based on Plaintiff's claim for deliberate indifference to his medical needs.