IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| LUTHER JAMES CLAYTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CV 309-042 |
| MARY ALSTON, Doctor, et al.,[1] | ) ) ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Johnson State Prison ("JSP") located in Wrightsville, Georgia, commenced the above-captioned action pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). The matter is presently before the Court on Defendants' "Pre-Answer Motion to Dismiss" (doc. no. 17), "Plaintiff's Motion to Grant Proceedings" (doc. no. 21), and "Plaintiff's Motion to Grant Relief Against Defendants Harman, Hobby, Brown, and Alston" (doc. no. 22). Plaintiff has responded to Defendants' motion (doc. nos. 21, 22),[2] and Defendants have replied to Plaintiff's motions (doc. no. 24).

---

[1] Pursuant to their answer, Defendants "P. Brown," "A. Hobby," and "Harmon" have provided that their names are Pamela Brown, Anna Hobby, and Marjorie Harman (doc. no. 17), as such the **CLERK** is **DIRECTED** to change the docket accordingly.

[2] Although Plaintiff filed two motions in which he requests that the Court allow his claims to proceed, he also responded to Defendants' motion to dismiss within his motions. Furthermore, the Court in an abundance of caution, explained to Plaintiff the consequences of failing to respond to a motion to dismiss and provided Plaintiff with an opportunity to supplement his responses to Defendants' motion. (Doc. no. 25). Plaintiff did not file any supplement.

For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' Motion to Dismiss (doc. no. 17) be **GRANTED IN PART** and **DENIED IN PART**, that Defendants Harman, Hobby, and Brown, as well as Plaintiff's claims concerning the incision and swelling in his right knee and the cancellation of his soft shoe profile, be **DISMISSED**, that Plaintiff's requests for monetary damages against Defendant Alston in her official capacity be **DISMISSED**, and that Plaintiff's motions (doc. nos. 21, 22) be **GRANTED IN PART** and **DENIED IN PART**.

I. **BACKGROUND**

In his complaint, Plaintiff asserted that he has diabetes and that he is not being properly treated for his diabetes, conditions resulting from his diabetes, as well as a skin condition.[3] (See generally doc. no. 1). More specifically, Plaintiff maintained that beginning in October 2008, his medication for his diabetes and his soft shoe profile were discontinued even though he was not first seen by a doctor. Plaintiff also argued that the medication for his skin condition was discontinued and that all of his medical conditions (those relating to his diabetes as well as his skin condition) were ignored by the nursing staff at JSP. (Id. at 7).

According to Plaintiff, he made a request to see a doctor about an incision and swelling in his right knee. (Id. at 8). Rather than being seen by a doctor, Plaintiff maintained

---

[3]Plaintiff's complaint also raised claims concerning procedures and grievance and supervisory liability, as well as named Defendants the Georgia Department of Corrections ("GDOC"), Washington, Morgan, Lawrence, Adams, Powell, and Calhoun. (Doc. no. 1). Those claims and Defendants have been dismissed. (Doc. no. 12). Accordingly, for purposes of Defendants' Motion to Dismiss, the Court will only address the facts pertinent to Plaintiff's remaining claims.

that he was seen by Defendant Hobby, a nurse. (Id.). Plaintiff maintained that Defendant Hobby "lied and stated [that Plaintiff] was evaluated on 10/29/08," and directed Plaintiff to apply warm moist compresses to his right knee. (Id.). Plaintiff further maintained that Defendant Hobby diagnosed Plaintiff's problem even though she is a nurse, not a doctor. (Id.). Plaintiff believed that because of his status as a "chronic care patient," he was required to be seen by a doctor. (Id.).

Regarding Defendant Harman, a nurse, Plaintiff asserted that she cancelled his soft shoe profile. (Id.). Plaintiff explained that he needed a new soft shoe because one of his shoes had torn. (Id.). Plaintiff noted that his soft shoe profile had not expired. (Id.). Plaintiff maintained that in order to obtain the new shoe, he was required to undergo a foot evaluation. (Id.). Plaintiff noted that Defendant Harman performed his foot evaluation and that he was not seen by a doctor. (Id. at 8-9). Plaintiff stated that rather than provide him with a new shoe, Defendant Harman discontinued his soft shoe profile. (Id.). Plaintiff believed that Nurse Harman, because she is a nurse, not a doctor, is not trained to make such a determination. (Id. at 9). Plaintiff made a similar complaint against another nurse, Defendant Brown. (Id.). Plaintiff stated that he requested to be seen by a doctor because he felt pain in his arms, legs, and back, but Defendant Brown purportedly refused to schedule Plaintiff to see a doctor because he had just seen a doctor four days before. (Id.). Plaintiff stated that Defendant Brown recommended that Plaintiff apply a warm compress and take Tylenol. (Id.). Plaintiff argued that because Defendant Brown is not a doctor, it was improper for her to diagnose him. (Id.).

Turning to Defendant Alston, the head medical doctor at JSP, Plaintiff alleged that

3

Defendant Alston discontinued his diabetic medication, as well as his soft shoe profile, even though she had never seen Plaintiff. (Id. at 10). Plaintiff alleged that as a result of the discontinuation of his medication, he suffered from dizziness and "shakes," and even "passed out" once. (Id.). Plaintiff maintained that since his soft shoe profile was discontinued, he has been forced to wear shoes that aggravate his foot condition. (Id.). Furthermore, Plaintiff alleged that although he had been prescribed soap for a skin condition, this prescription was discontinued (presumably by Defendant Alston), and as a result, Plaintiff's sores have worsened to the point he can "barely sleep due to [the] discomfort." (Id.). For relief, Plaintiff requested proper treatment for his various medical conditions and compensation for his pain and suffering. (Id. at 11).

The Court sanctioned Plaintiff's claims against Defendants Harman, Hobby, Brown, and Alston for deliberate indifference to his serious medical needs concerning Plaintiff's diabetes, medical conditions resulting from the diabetes (for example, Plaintiff's claim concerning the treatment for the inflamation of his knee, as well as claims made concerning his soft shoe profile), and skin condition. Defendants now seek to dismiss Plaintiff's complaint for Plaintiff's failure to exhaust his administrative remedies, as well as for Plaintiff's failure to state a claim for deliberate indifference to his serious medical needs. (See generally doc. no. 17).

Plaintiff requests that the Court "grant [his request for] relief against Defendants Harman, Hobby, Brown, and Alston." (Doc. no. 22). Notably, Plaintiff does not address the exhaustion issue. Rather, he states that he has stated a viable Eighth Amendment claim and therefore requests that the Defendants' motion be denied.

## II. DISCUSSION

### A. Applicable Legal Standard for Exhaustion

Where a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, as Defendants have here, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.
>
> . . . .
>
> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues. . . . The defendants bear the burden of proving that the plaintiff has failed to exhaust his administrative remedies. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings, the prisoner has exhausted his available administrative remedies.

Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 129 S. Ct. 733 (U.S. Dec. 8, 2008)). Where exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

### B. The Administrative Grievance Process

Within the Georgia Department of Corrections, the administrative grievance process

is governed by SOP IIB05-0001. Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. SOP IIB05-0001 § VI(B). The inmate has ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. Id. § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. § VI(C)(2) & (D). The SOP requires that an inmate be given a response to his informal grievance within 10 calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has 5 business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2),(5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. Id.

### C. Failure To Exhaust Administrative Remedies

As noted above, the Court sanctioned Plaintiff's claims against Defendants Harman,

Hobby, Brown, and Alston for deliberate indifference to his serious medical needs concerning Plaintiff's diabetes, medical conditions resulting from the diabetes (for example, Plaintiff's claim concerning the treatment for the inflamation of his knee, as well as claims made concerning his soft shoe profile), and skin condition. Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act's ("PLRA") mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 92 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90-91 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 548 U.S. 925 (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 Fed. App'x 918, 920 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155).

7

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, an inmate must complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Following the Burnside test set forth *supra*, the Court first looks to Defendants' factual allegations. See Burnside, 541 F.3d at 1082-83. Defendants contend that Plaintiff failed to exhaust his administrative remedies concerning the incision and swelling in his right knee and the cancellation of his soft shoe profile. (Doc. no. 17). Plaintiff does not contest the exhaustion issue.

Here, the record reflects that Plaintiff, while incarcerated at JSP, exhausted his administrative remedies with respect to 7 grievances. (Doc. no. 17, Morris Aff. and Exs. B, C). None of these grievances address Plaintiff's complaints concerning the incision and swelling in his right knee and the cancellation of his soft shoe profile. Rather, these grievances address Plaintiff's complaints against Defendant Alston concerning the discontinuation of his diabetic medication and his prescribed soap for his skin condition. The grievances also address Plaintiff's complaint against Defendant Brown concerning his allegation that she refused to schedule him an appointment with a doctor regarding the pain he was feeling in his arms, legs, and back. (Id.). As such, the record reflects that Plaintiff

8

failed to exhaust his administrative procedure concerning his incision and swelling in his right knee and the cancellation of his soft shoe profile. Accordingly, Plaintiff's claims concerning the incision and swelling in his right knee and the cancellation of his soft shoe profile, as well as Defendants Harman and Hobby, should be **DISMISSED**.[4]

### D. Dismissal For Failure To State A Claim Upon Which Relief Can Be Granted

Defendants also maintain that Plaintiff's claims against Defendants Alston and Brown for deliberate indifference to his serious medical needs should be dismissed for failure to state a viable claim. (Doc. no. 17). In his response to Defendants' motion, Plaintiff asserts that he has stated viable claims and requests that he be allowed to proceed with his claims. (Doc. nos. 21, 22).

#### 1. Applicable Legal Standard

A motion under Rule 12(b)(6) challenges the legal sufficiency of the complaint. "In essence, a movant says, 'Even if everything you allege is true, the law affords you no relief.'" Johnson v. Fleet Finance, Inc., 785 F. Supp. 1003, 1005 (S.D. Ga. 1992) (Edenfield, J.). In deciding a motion to dismiss under Rule 12(b)(6), all of the non-moving party's allegations must be presumed true and all reasonable inferences must be construed in the light most favorable to the non-moving party. Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990). Furthermore, a claim presented by a *pro se* litigant like Plaintiff should not be dismissed if the facts alleged in the

---

[4]These are the only claims that the Court allowed against Defendants Harman and Hobby, and thus they should be dismissed from the case. Other claims remain against Defendants Alston and Brown that will be addressed *infra*.

complaint are sufficient to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561-62 (2007). Moreover, granting a motion to dismiss is disfavored and rare. Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997). Finally, while factual allegations in the complaint must be taken as true when considering a motion to dismiss, there is no requirement that the Court must accept as true the plaintiff's conclusions of law. See Solis-Ramirez v. United States Dep't of Justice, 758 F.2d 1426, 1429 (11th Cir. 1985). With these principles in mind, the Court turns its attention to the motion at hand with respect to Plaintiff's claims concerning Defendants Brown and Alston.

### 2. Standard For Deliberate Indifference To Serious Medical Needs

Defendants argue that Plaintiff fails to sufficiently allege an Eighth Amendment violation against Defendants Brown and Alston. (Doc. no. 17). Although it is true that "[t]he Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs," Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999), to support a claim for deliberate indifference to a serious medical need, Plaintiff must meet a two-prong test. First, based on an objective standard, the alleged medical problem must be "sufficiently serious"; second, the defendant must have subjectively acted with "deliberate indifference" to the inmate's health or well-being. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state the proposition differently, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Id. at 835-39.

To show the deliberate indifference that would violate the Eighth Amendment, Plaintiff must allege that prison officials knew about and disregarded an excessive risk to his health or safety. See id. at 837. When subjectively weighing whether prison officials are deliberately indifferent, the courts require plaintiffs to show "more than mere negligence," and look for "obduracy and wantonness, not inadvertence or error in good faith." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (citation omitted); see also Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). To state a viable Eighth Amendment claim, Plaintiff must show that the defendants acted with "deliberate indifference" to his medical needs, such as an intentional refusal to provide care, cursory care in light of a severe medical risk, or a delay in access to care that is essentially a wanton infliction of pain. Adams, 61 F.3d at 1543-44. Only when medical care is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness'" will the standard of "deliberate indifference" be met. Id. at 1544 (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Mere allegations of negligence or malpractice do not amount to deliberate indifference. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

### a. Defendant Alston

Plaintiff makes the following allegations against Defendant Alston: (1) that she discontinued his diabetic medication; (2) as a result of the discontinuation of his medication, Plaintiff suffers from dizziness and "shakes," and even "passed out" once; (3) that Defendant Alston discontinued a soap that had been prescribed for his skin condition; and (4) that as a result of the discontinuation of the prescription soap, Plaintiff's sores have

worsened to the point he can "barely sleep due to [the] discomfort."[5] (Doc. no. 1, p. 10).

Defendants argue that discontinuing specified treatments does not mean that Plaintiff was not being given any medical attention for his medical problems. (Doc. no. 17, pp. 14-15). Defendants assert:

> It is common knowledge, however, that diabetes is often treated through diet and exercise, so Plaintiff's claims do not amount to an Eighth Amendment deliberate indifference claim. Similarly[,] skin conditions are often treated with lotions and ointments. Therefore, just because Dr. Alston may have discontinued a soap for a skin condition does not mean that the condition was being ignored.

(Id. at 15). Additionally, Defendants maintain that Plaintiff fails to allege an injury sufficient to sustain an Eighth Amendment claim. (Id.). According to Defendants, the injuries cited by Plaintiff were all *de minimis*, and Plaintiff does not "meaningfully" assert that their actions caused Plaintiff's condition to worsen. (Id. at 17).

Notably, contrary to Defendants' argument, Plaintiff specifically alleged that his medication for his diabetes and skin condition were discontinued. (Doc. no. 1). Plaintiff does not allege that his medication was discontinued and then was substituted with a different treatment; he simply alleges his medication was discontinued. Furthermore, to the extent Defendants argue that it is common knowledge that diabetes can be treated by exercise and diet, it is also common knowledge that failure to treat certain types of diabetes can be fatal. More importantly, however, as previously stated, there is no indication that when Plaintiff's medication was discontinued, an exercise and diet regimen were implemented.

---

[5]Plaintiff also alleged that Defendant Alston discontinued his soft shoe profile and improperly treated the incision/swelling in his right knee. However, as noted above, Plaintiff failed to exhaust his administrative remedies as to those claims; the Court will not address the merits of those claims.

The complaint only provides that the medication was discontinued. The Court declines Defendants' invitation to consider, on a motion to dismiss, facts outside the complaint, i.e. that Plaintiff's treatment had been supplemented in other ways.

Defendants' argument that Plaintiff's deliberate indifference to his medical needs claim should be dismissed because he only alleged, at best, *de minimis* injury, also fails. Defendants characterize Plaintiff's alleged injury, concerning his claims against Defendant Alston, as dizziness and itching.[6] (Doc. no. 17, p. 17). However, a reading of Plaintiff's complaint reveals that what Plaintiff actually alleged was that as a result of the discontinuation of his medication, he suffered from dizziness and "shakes," and even "passed out" once, and as a result of the discontinuation of the soap that had been prescribed for his skin condition, Plaintiff's sores have worsened to the point he can "barely sleep due to [the] discomfort." (Doc. no. 1, p. 10).

The Court is aware that Defendants have cited to non-binding case law that stand for the proposition that Plaintiff's alleged injuries are *de minimis* and thus are insufficient to support an Eighth Amendment claim. (Doc. no. 17, pp. 15-16 (citing Jackson v. Johnson, Civil Case No. 404-110, doc. no. 124, *adopted by* doc. no. 126 (M.D. Ga. Sept. 20, 2005); Henderson v. Sheahan, 196 F.3d 839 (7th Cir. 1999); Taylor v. McDuffie, 155 F.3d 479, 480 482 (4th Cir. 1998)[7]; and Junior v. Outlaw, Civil Case No. 105-166, doc. no. 4, *adopted by*

---

[6]As previously noted, Plaintiff's claims concerning the incision in his right knee and his soft shoe profile have not been exhausted, and thus, the Court will not address the arguments raised by Defendants concerning the merits of those claims.

[7]Taylor, 155 F.3d 479, has been abrogated by a recent Supreme Court decision. See Wilkins v. Gaddy, 130 S.Ct. 1175 (2010). The Court is aware that this case was decided after Defendants submitted their motion to dismiss. Wilkins addresses an excessive force

13

doc. no. 8 (S.D. Ala. Jan. 13, 2006)). Notably, all but Outlaw, which was dismissed on a screening pursuant to 28 U.S.C. § 1915, addressed the issue of whether the plaintiff's alleged injury was *de minimis* at the summary judgment phase. Additionally, Outlaw is distinguishable from the case *sub judice*. In Outlaw, the plaintiff sued the defendant for assault because the defendant kicked the plaintiff twice on his bottom. Outlaw, Civil Case No. 105-166, doc. no. 4. Importantly, in that case, as the plaintiff failed to allege any injury whatsoever, the court found that he failed to state a claim under the Eighth Amendment. Id. In the instant case, Plaintiff's allegations that as a result of the discontinuation of his medication, he suffered from dizziness and "shakes," and even "passed out" once, and as a result of the discontinuation of the soap that had been prescribed for his skin condition, Plaintiff's sores have worsened to the point he can "barely sleep due to [the] discomfort," are sufficient for this stage of the proceedings.

Because a claim presented by a *pro se* litigant like Plaintiff should not be dismissed if the facts he has alleged are sufficient to state a claim for relief that is plausible on its face, Bell Atlantic Corp., 127 S. Ct. at 1968-69, the Court concludes that at this stage of the proceedings, Plaintiff has sufficiently stated an Eighth Amendment claim for deliberate indifference to his serious medical needs against Defendant Alston.

---

claim; the district court dismissed the plaintiff's claim relying on Taylor, holding that "[i]n order to state an excessive force claim under the Eighth Amendment, a plaintiff must establish that he received more than a *de minimus* [sic] injury." In Wilkins, the Supreme Court explained that in an excessive force claim, the inquiry should be as to the nature of the force as opposed to the extent of the injury. As such, the Supreme Court found that the district court erred in concluding that the absence of "some arbitrary quantity of injury" required automatic dismissal of an excessive force claim.

### b. Defendant Brown

Concerning Defendant Brown, Plaintiff alleged that he made a request to her that he be scheduled to see a doctor because he was feeling pain in his arms, legs, and back. (Doc. no. 1, p. 9). Plaintiff further alleged that Defendant Brown refused to schedule Plaintiff to see a doctor because he had just seen a doctor four days before. (Id.). Plaintiff maintained that Defendant Brown only recommended that Plaintiff apply a warm compress and take Tylenol.

Notably, Plaintiff, does not complain that he failed to receive treatment for his pain, as he was seen by Defendant Brown and was directed to apply warm compresses and take Tylenol; rather, he complains that he should have been treated by a doctor. Thus, it appears that Plaintiff simply had a difference of opinion concerning the treatment for his pain. The Eleventh Circuit has consistently held that a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment does not support a claim of cruel and unusual punishment. See Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). That is, the burden of proving deliberate indifference cannot be met simply by arguing that an inmate wanted a different type of treatment. See Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments. . . . Id. (citation omitted)).

Importantly, Plaintiff acknowledges in his complaint that Defendant Brown did not refuse to provide care; she treated Plaintiff by recommending that he apply warm compresses

15

and take Tylenol. Likewise, there is nothing to show that Defendant Brown delayed providing Plaintiff access to care. Indeed, Plaintiff's complaint reflects that he was repeatedly seen by the medical staff at JSP. He acknowledges that he was seen by Nurse Harman concerning his soft shoe profile, he had been seen by a doctor four days before he filled out a form to see a doctor on February 8, 2009, and he had been prescribed medication by one of the other doctors. (Doc. no. 1, pp. 8, 9, 10). As such, Plaintiff's complaint against Defendant Brown simply amounts to the fact that he wanted to be seen by a doctor and not a nurse, which is nothing more than a difference of opinion. See Hamm, 774 F.2d at 1575. There is no dispute that Plaintiff has received medical attention while at JSP, but he was not satisfied with the treatment received. Accordingly, Plaintiff has not alleged that Defendant Brown acted with deliberate indifference to his serious medical needs. Therefore, Plaintiff's claim for deliberate indifference against Defendant Brown should be **DISMISSED**.

In sum, the Court finds that Plaintiff failed to state a claim against Defendant Brown for deliberate indifference to a serious medical need. However, the Court finds that Plaintiff has sufficiently alleged a claim against Defendant Alston for his claim concerning deliberate indifference to his serious medical needs. Therefore, Defendants' motion to dismiss should be **GRANTED** as to Plaintiff's claim against Defendant Brown, but **DENIED** as to Plaintiff's claims against Defendant Alston.

### E. Qualified Immunity

As the Court has recommended that Defendants Harman, Hobby, and Brown be dismissed, the Court will only address Defendant Alston's claim for qualified immunity. Defendant Alston contends that, even if she is not entitled to summary judgment on the

merits of Plaintiff's claims, she, nonetheless, is entitled to qualified immunity. (Doc. no. 17, pp. 18-20).

State officials, such as Defendant Alston, acting within their discretionary authority are entitled to immunity from suit unless their actions violate a "clearly established" right "of which a reasonable person would have known." Powell v. Georgia Dep't of Corr., 114 F.3d 1074, 1077 (11th Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Stated another way, "[a] right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent, and if a constitutional rule applies with obvious clarity to give an official fair warning that violating that right is actionable." Bennett v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005) (internal citations and quotations omitted). "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003). Also, the Eleventh Circuit has held: "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decision of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997).

In this case, Defendant Alston claims that she is entitled to qualified immunity because she was clearly acting within the scope of her discretionary authority and did not violate any of Plaintiff's constitutional rights. (Doc. no. 17, p. 20). As previously noted, "The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs."

Campbell, 169 F.3d at 1363. To state a viable Eighth Amendment claim, Plaintiff must show that the defendants acted with "deliberate indifference" to his medical needs, such as an intentional refusal to provide care, cursory care in light of a severe medical risk, or a delay in access to care that is essentially a wanton infliction of pain. Adams, 61 F.3d at 1543-44.

Viewing Plaintiff's allegations and all reasonable inferences in a light most favorable to Plaintiff, the non-movant, the Court disagrees with Defendant Alston's argument that she is entitled to qualified immunity. Here, Plaintiff's allegation that Defendant Alston discontinued his medical treatment for his diabetes and skin condition can be viewed as an intentional refusal of care or cursory care in light of a severe medical risk. Thus, Plaintiff has claimed that Defendant Alston violated a "clearly established" right "of which a reasonable person would have known." Therefore, Defendant Alston is not entitled to qualified immunity.

### F. Relief Sought By Plaintiff

As relief, Plaintiff requested monetary damages, as well as declaratory and injunctive relief. He requested, among other things, that he receive proper medical treatment and that those responsible for his pain and suffering be "highly fined and reprimanded." (Doc. no. 1, p. 11).

To the extent Plaintiff has attempted to sue Defendants in their respective official and individual capacities for monetary damages, the Eleventh Amendment bars official capacity claims against state prison officials and/or the Georgia Department of Corrections for monetary damages. Kentucky v. Graham, 473 U.S. 159, 169 (1985). In this case, Plaintiff's allegations relate to actions undertaken by Defendants while performing functions as state

prison officials. Therefore, Plaintiff's official capacity claims for monetary damages are not cognizable and should be dismissed. Accordingly, Defendants' motion to dismiss Plaintiff's official capacity claims for monetary damages is **GRANTED**.[8]

### III. CONCLUSION

In sum, the Court finds that Plaintiff failed to exhaust his administrative remedies as to his claims concerning the treatment for the incision/swelling in his right knee and his soft shoe profile. As a result, those claims and Defendants Harman and Hobby should be dismissed. Plaintiff also failed to state a claim upon which relief can be granted against Defendant Brown, and thus, she should be dismissed. Plaintiff has sufficiently alleged a claim for deliberate indifference to his serious medical needs against Defendant Alston, thus his claims against her should go forward. Moreover, the Court finds at this stage of the proceedings, Defendant Alston is not entitled to qualified immunity. Finally, Plaintiff is not entitled to claims for monetary damages against Defendant Alston in her official capacity, as such his requests for monetary damages against Defendant Alston in her official capacity should be dismissed.

Accordingly, for the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendants' Motion to Dismiss (doc. no. 17) be **GRANTED IN PART** and **DENIED IN PART**, that Defendants Harman, Hobby, and Brown, as well as

---

[8] Defendants also argue that Plaintiff is not entitled to his requested injunctive relief and/or damages for mental or emotion injury. As the Court has recommended that Plaintiff be allowed to proceed with his claims for deliberate indifference to his serious medical needs against Defendant Alston, Defendants' motion to dismiss Plaintiff's requested injunctive relief and damages for mental or emotion injury, should be denied without prejudice, subject to re-urging when the record is more fully developed.

Plaintiff's claims concerning the incision and swelling in his right knee and the cancellation of his soft shoe profile, be **DISMISSED**, that Plaintiff's requests for monetary damages against Defendant Alston in her official capacity be **DISMISSED**, and that Plaintiff's motions (doc. nos. 21, 22) be **GRANTED IN PART** and **DENIED IN PART**.[9]

SO REPORTED and RECOMMENDED this 31st day of March, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[9] In light of the Court's recommendations, to the extent Plaintiff requests that he be allowed to proceed with his case against Defendants Harman, Hobby, and Brown, his requests should be denied. To the extent Plaintiff requests that his claims for deliberate indifference to his serious medical needs against Defendant Alston be allowed to proceed, his request should be granted.

20