ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2011 JUL 13 PM 3: 14

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| LUTHER JAMES CLAYTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 309-042 |
| | ) | |
| DR. MARY ALSTON, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

At the time of the events giving rise to the above-captioned case brought pursuant to 42 U.S.C. § 1983, Plaintiff was an inmate incarcerated at the Johnson State Prison ("JSP") in Wrightsville, Georgia. Plaintiff is proceeding *pro se* and *in forma pauperis* in this case, which is now before the Court on Defendant's motion for summary judgment. (Doc. no. 48.) Plaintiff has filed a response in opposition to Defendant's motion (doc. no. 53), along with a "Motion to Dismiss Defendant's Motion for Summary Judgment"[1] (doc. no. 52), an affidavit[2] (doc. no. 55), and a series of filings styled as statements of material facts[3] (doc.

---

[1] In his motion to "dismiss" Defendant's motion for summary judgment, Plaintiff asserts that Defendant's motion should be denied in consideration of his response to the motion and other filings. (See doc. no. 52.) This filing is therefore in the nature of a response to Defendant's motion rather than a motion to dismiss.

[2] In addition to his own affidavit, Plaintiff has submitted the affidavits of three other prisoners at JSP. (Doc. no. 55, pp. 25-33.) These affidavits consist primarily of allegations regarding the affiants' medical care at JSP, and provide no information concerning Defendant's treatment of Plaintiff. (See id.) Accordingly, the Court finds that they are not

nos. 54, 60, 62). Defendant has filed a reply to Plaintiff's response, and has responded to each of Plaintiff's "statements of material facts." (Doc. no. 57, 58, 61, 63.) For the reasons set forth below, the Court **REPORTS AND RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED** (doc. no. 48), that Plaintiff's "motion to dismiss" be **DENIED** (doc. no. 52), that a final judgment be **ENTERED** in favor of Defendant, and that this civil action be **CLOSED**.

## I. FACTS

Plaintiff arrived at JSP via transfer on June 17, 2008, and remained incarcerated there during the time period relevant to this case. (Doc. no. 48-3 (hereinafter "Pl.'s Dep."), p. 13 & Ex. 1 (documentation of Plaintiff's transfer history); doc. no. 55 (hereinafter "Clayton Aff."), ¶ 3.) Defendant was the medical director at JSP at the time Plaintiff arrived, and continued in that position until Spring 2010, at which point she transferred to the position of medical director at a different prison. (Doc. no. 66-1 (hereinafter "Alston Aff."), ¶ 4.)

Plaintiff's remaining claims[4] in this case concern the medical care he received while incarcerated at JSP. Specifically, Plaintiff claimed in his complaint that, in September of 2008, Defendant showed deliberate indifference to his medical needs by discontinuing his

---

relevant to the instant case and will not address their content in detail.

[3]These "statements of material facts" are largely duplicative of one another, and much of their content consists of citations to case law and legal argumentation. (See doc. nos. 54, 60, 62.)

[4]Several other claims that Plaintiff attempted to assert in his complaint were dismissed when the complaint was screened pursuant to the IFP statute, 28 U.S.C. § 1915A. (See doc. nos. 8, 12.) Additional claims were dismissed in an Order adopting this Court's recommendation that a motion to dismiss filed by Defendant and several former-Defendants be granted in part. (See doc. nos. 27, 38.)

2

prescription for a medication previously prescribed to treat his diabetes.[5] (See doc. no. 1, p. 10.) Plaintiff also alleged that Defendant discontinued his prescription for a special soap used to treat a serious skin condition, resulting in sores that caused extreme pain and discomfort. (Id.)

### A. Facts Relating to Diabetes Claim

Plaintiff suffers from Type 2 Diabetes, also known as hyperglycemia. (Alston Aff. ¶¶ 19, 24; doc. no. 48-5, p. 21-22 (Plaintiff's prison medical records).) Plaintiff had been diagnosed with diabetes prior to arriving at JSP, and at the time of his arrival he was taking Glyburide and Metformin for his diabetic condition, as prescribed by physicians at ASP. (Alston Aff. ¶ 8.)

On July 16, 2008, Plaintiff suffered a hypoglycemic episode, as a result of which he received treatment at the emergency room of the local hospital. (Alston Aff. ¶ 22; doc. no. 48-5, pp. 22, 51, 54-55, 57.) In order to prevent another such episode, Plaintiff's medication was adjusted; his Glyburide prescription was discontinued and he was prescribed a reduced amount of Metformin.[6] (Alston Aff. ¶ 23; doc. no. 48-5, p. 12; doc. no. 48-6, pp. 19, 24 (additional medical records).) Also, tests administered in early July of 2008 indicated that,

---

[5]Plaintiff later clarified that this diabetes medication had been prescribed by physicians at Autry State Prison ("ASP"), where he was previously incarcerated. (Clayton Aff. ¶ 12.)

[6]Notably, this change in Plaintiff's medication is not the subject of Plaintiff's claim regarding Defendant's treatment of his diabetes; his claim focuses exclusively on the later discontinuance of his Metformin prescription, as discussed below. (See doc. no. 1, p. 10; Pl.'s Dep., p. 21.) Moreover, as Defendant points out, there is no evidence suggesting that she was responsible for the change in Plaintiff's medication immediately following his July 16th emergency room visit. (See doc. no. 48-1, p. 3 n.3.)

3

in addition to Type II Diabetes, Plaintiff was suffering from Stage III Chronic Kidney Disease ("CKD"), a condition that can cause "high blood pressure, anemia, and bone disease," and, unless slowed, "will ultimately lead to kidney failure." (Alston Aff. ¶ 24, doc. no. 48-5, p. 22.)

On September 30, 2008, Defendant discontinued Plaintiff's Metformin prescription altogether. (Alston Aff. ¶ 26; doc. no. 48-5, pp. 11, 22, 44.) She did so because Metformin "is contraindicated for CKD and other kidney diseases." (Alston Aff. ¶ 26.) Defendant ordered that "fingerstick blood sugar tests" be performed twice daily during the two-week period following the discontinuance of Plaintiff's Metformin prescription to monitor his blood sugar levels. (Alston Aff. ¶ 28; doc. no. 48-6, pp. 3-5.) In addition, Defendant noted in Plaintiff's medical records that insulin treatment might need to be considered in the future. (Alston Aff. ¶ 27; doc. no. 48-5, p. 44.) The results of the tests ordered by Defendant, as well as an additional test performed on November 28, 2008, indicated that Plaintiff was responding well to the change in his treatment. (See Alston Aff. ¶¶ 29-30; doc. no. 48-5, p. 36; doc. no. 48-6, pp. 5, 9.)

On December 11, 2008, Plaintiff experienced an episode involving a headache, dizziness, weakness, paranoia, and a possible blackout. (Pl.'s Dep., p. 22; Doc. no. 48-5, p. 37.) Defendant did not treat Plaintiff for this episode. However, Defendant attests that, based on her review of the relevant medical records, the episode was not related to Defendant's diabetes, and appears to have been caused by dehydration, as reflected by the fact that Plaintiff was initially treated with an increase in fluid intake. (Alston Aff. ¶ 33; doc. no. 48-5, p. 37.) Defendant reports that Plaintiff's prescription for Glyburide – but not

4

Metformin – was reinstated shortly after the December 11th episode. (Alston Aff. ¶ 34.) According to Plaintiff, both his Glyburide and Metformin prescriptions were reinstated around February of 2009, and he has had no further "episodes." (Clayton Aff. ¶ 12.)

## B. Facts Relating to Skin Condition Claim

Prior to his transfer to JSP, Plaintiff was diagnosed with the skin conditions of psoriasis and eczema. (Pl. Dep., pp. 14-16; doc. no. 48-5, pp. 19, 21.) Physicians at Plaintiff's previous place of confinement had prescribed Triamcinolone to treat these conditions, a medication that Defendant describes as "an ointment used to treat several skin conditions." (Alston Aff. ¶ 8; doc. no. 48-5, p. 14.) Plaintiff was also provided with a monthly allocation of Dove soap at his previous prison.[7] (Doc. no. 48-5, p. 14; Clayton Aff. ¶ 5.) Plaintiff initially continued to receive both Triamcinolone and a Dove soap allotment following his transfer to JSP, and was additionally allowed one bottle of lotion per month. (Alston Aff. ¶ 18; doc. no. 48-5, pp. 105-08.)

Approximately three months after Plaintiff arrived at JSP, Defendant discontinued his Dove soap allotment. (Alston Aff. ¶ 12.) Plaintiff continued to receive lotion, as well as Triamcinolone, following this disallowance.[8] (Id. ¶ 12; doc. no. 48-5, p. 11.) Defendant attests in her affidavit that Dove soap is not used to treat serious medical conditions, and

---

[7]Plaintiff attests that his Dove soap allotment was initially ordered by a dermatologist at Augusta State Medical Prison. (Clayton Aff. ¶ 6.) Plaintiff states that the same dermatologist ordered that he be provided with skin lotion, and that he received lotion prior to his transfer to JSP. (Id.; doc. no. 53, p. 8.)

[8]In addition, Plaintiff was prescribed Atarax, a prescription antihistimine, when he presented with itching and a rash during a medical visit in September of 2008, prior to the discontinuance of his Dove soap allotment. (Alston Aff. ¶ 15; doc. no. 48-5, p. 46.)

explains that lotion is preferable for inmates because it can be more readily applied as needed. (Alston Aff. ¶¶ 11, 13.) During his deposition, Plaintiff testified that before his Dove soap was discontinued, his symptoms included "[d]ry, scaly, flaky skin, and itching," as well as "breaking out and getting sores [that would heal but later reappear]." (Pl. Dep., p. 18.) He then testified that after the soap was discontinued, he continued to suffer from the same symptoms, without indicating any increase in the frequency or severity of such symptoms. (Id.)

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Applicable substantive law identifies which facts are material in a given case.[9] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving

---

[9]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

6

party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the <u>non-moving</u> party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Merits of Plaintiff's Claims

As noted above, Plaintiff contends that he received inadequate medical treatment due to Defendant's actions, and that Defendant was therefore deliberately indifferent to his

7

serious medial needs in violation of his Eighth Amendment constitutional rights. (See generally doc. nos. 1, 53.) Defendant argues that Plaintiff has failed to offer sufficient evidence in support of his claims of deliberate indifference, and she asserts that she is entitled to qualified immunity. (See generally doc. no. 48-1.)

To prevail on a claim of deliberate indifference to serious medical needs, Plaintiff must show: (1) that he had an objectively serious medical need, (2) that Defendant acted with deliberate indifference to that need, and (3) that his injury was caused by Defendant's wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (noting that a plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim).

To satisfy the requirement of showing an objectively serious medical need, a prisoner must show that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994)). To show that Defendant was deliberately indifferent to his medical needs, Plaintiff must offer proof that Defendant: (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendant disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Id.

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation and citation omitted). The Eighth Amendment

does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505.

With these principles in mind, the Court turns its attention to the claims at issue in the instant motion.

### 1. Diabetes Claim

As noted above, Plaintiff claims that Defendant's decision to discontinue his Metformin prescription in September of 2008 constituted deliberate indifference to the serious medical need arising from his diabetic condition. (See doc. no. 1, p. 10; see generally doc. no. 53.) Defendant asserts that she is entitled to summary judgment on this claim because Plaintiff cannot show any injury resulting from Defendant's discontinuance of his medication and cannot show that Defendant's treatment was improper, much less deficient

to the degree that it amounted to deliberate indifference to Plaintiff's medical needs. (See doc. no. 48-1, pp. 8-9.) Defendant has the better argument.

The evidence indicates that Plaintiff's diabetic condition constitutes a serious medical need, and Defendant does not argue otherwise. (See Alston Aff. ¶¶ 19, 24; doc. no. 48-5, p. 21-22 (Plaintiff's prison medical records).) However, Plaintiff cannot show deliberate indifference to that serious medical need because his claim amounts to a mere disagreement with Defendant's medical judgment that Plaintiff be taken off Metformin because it posed a threat to his health in light of his serious kidney condition. (See Alston Aff. ¶ 26 (explaining that Plaintiff's prescription was cancelled because "Metformin is contraindicated for CKD and other kidney diseases"); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir.1989) (noting that a "simple difference in medical opinion" does not rise to the level of constitutional violation).) Moreover, Defendant specifically addressed the risk of discontinuing the medication by ordering blood sugar tests to monitor Plaintiff's condition during the period immediately following the discontinuance and noting that Plaintiff might need to be considered for insulin treatment in the future. (Id. ¶ 27-28; doc. no. 48-5, p. 44; doc. no. 48-6, 3-5.) Even if the decision to discontinue Plaintiff's prescription was wrong – a fact that is not borne out by the evidence – it would amount to nothing more than negligence, which is insufficient to show deliberate indifference. See Goebert, 510 F.3d at 1326.

The Court also agrees with Defendant that Plaintiff has failed to show any injury resulting from Defendant's conduct. The only adverse effect that Plaintiff has alleged is the "episode" that he suffered on December 11, 2008, in which he suffered a headache,

dizziness, weakness, paranoia, and a possible blackout. (Pl.'s Dep., p. 22; doc. no. 48-5, p. 37.) However, the only evidence as to the causation of this occurrence is Defendant's statement that, in her opinion as a physician, it was not related to his diabetes and was most likely caused by dehydration. (Alston Aff. ¶ 33.) Plaintiff has not shown any evidence suggesting the episode was caused by Defendant's actions, and the evidence regarding Plaintiff's condition following his withdrawal from Metformin indicated an improvement in his condition. (See Alston Aff. ¶¶ 29-30; doc. no. 48-5, p. 36; doc. no. 48-6, pp. 5, 9.) Therefore, with regard to his diabetes claim, Plaintiff has failed to satisfy the requirement that he show an injury caused by Defendant's conduct. See Goebert, 510 F.3d at 1326; see also Oliver v. Falla, 258 F.3d 1277, 1282 (11th Cir. 2001) ("[I]n an Eighth Amendment case, the plaintiff must show actual injury . . . .").

In sum, with regard to his diabetes claim, Plaintiff has failed to come forth with evidence showing that Defendant was deliberately indifferent to his serious medical need or that he suffered an injury as a result of Defendant's conduct. Accordingly, Defendant's motion for summary judgment should be granted as to this claim.

### 2. Skin Condition Claim

The essence of Plaintiff's skin condition claim is that Defendant somehow violated his Eighth Amendment constitutional right to be free from cruel and unusual punishment by taking away his monthly allowance of Dove soap. The Court readily concludes that this claim is completely bereft of merit. Even if the Court were to assume, for the sake of argument, that Plaintiff's skin conditions gave rise to a serious medical need, Plaintiff cannot show that Defendant was deliberately indifferent to that need by denying him access to a

11

particular brand of soap. "Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris, 941 F.2d at 1505 (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). The notion that Defendant's decision to discontinue Plaintiff's Dove soap allowance satisfies this standard is outlandish, especially in light of the fact that Plaintiff continued to receive Triamcinolone, the medical ointment prescribed to treat his skin conditions. (Alston Aff. ¶ 18; doc. no. 48-5, pp. 105-08.) Furthermore, as Defendant persuasively argues, Plaintiff has failed to show any injury resulting Defendant's treatment of his skin condition; to the contrary, he testified that he continued to suffer from the same symptoms after his soap allotment was discontinued. (Pl. Dep., p. 18.) Because there is no evidence to support Plaintiff's claim that Defendant's treatment of his skin condition amounted to deliberate indifference to a serious medical need, Defendant is entitled to summary judgment on this claim.[10]

### III. CONCLUSION

In sum, the Court **REPORTS AND RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED** (doc. no. 48), that Plaintiff's motion to "dismiss"

---

[10]In light of the Court's conclusion that Defendant is entitled to summary judgment for the reasons set forth above, it is unnecessary to address the merits of Defendant's qualified immunity argument. Furthermore, because Defendant is entitled to summary judgment, Plaintiff's motion to dismiss" her summary judgment motion should be denied. (Doc. no. 52.)

Defendant's motion for summary judgment be **DENIED** (doc. no. 52), that a final judgment be **ENTERED** in favor of Defendant, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 13th day of July, 2011, at Augusta, Georgia.

_W. Leon Barfield_
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE